**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

MAURICE OAKLEY CLAY,

      Petitioner,

v.                                Civil No. 2:11-CV-13868

DAVID BERGH,

      Respondent.

_____/

**OPINION AND ORDER DENYING (1) PETITION FOR WRIT OF HABEAS CORPUS,**
**(2) MOTION TO STAY PROCEEDINGS, AND (3) MOTION FOR**
**RECONSIDERATION, AND DECLINING TO ISSUE A CERTIFICATE OF**
**APPEALABILITY**

Maurice Oakley Clay, ("Petitioner"), incarcerated at the Thumb Correctional

Facility in Lapeer, Michigan, seeks the issuance of a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for first-

degree criminal sexual conduct (CSC I),[1] kidnapping, [2] and assault with intent to rob

while armed.[3]  For the reasons that follow, the petition for writ of habeas corpus is

DENIED.

## I.  BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the

Washtenaw County Circuit Court.  The court recites verbatim the relevant facts relied

_____

[1]Mich. Comp. Laws § 750.520b(1)(f).

[2]Mich. Comp. Laws § 750.349.

[3]Mich. Comp. Laws § 750.89.

1

upon by the Michigan Court of Appeals, which are presumed correct on habeas review

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.

2009):

> Defendant's convictions arise from an assault on December 27, 1989. The victim testified that she left work at the Briarwood Mall in Ann Arbor at approximately 9:00 p.m. As she was getting into her car, a man approached her and struck her on the head with a tire iron. The man then threw her into the passenger seat of the car, pulled her coat over her head, shoved her down in the seat, and drove to a secluded office complex parking lot. As he drove, the victim tried to look up, but the man kept pushing her head down below the window.
>
> When they arrived at the parking lot, the man demanded money and became angry when he discovered that the victim did not have any. The man then sexually assaulted the victim while armed with a knife. Afterward, he instructed the victim to drive back to the mall parking lot. While en route, he threw the victim's purse and wallet out the car window. The police later recovered the items. After arriving back at the mall, the victim was able to escape from the car after punching the man. Other employees were leaving for the night and the victim was taken to a hospital by two coworkers. They testified that the victim's clothes were in disarray, her nylons had been ripped, and she was bleeding from her head. The victim's assailant was able to escape.
>
> The victim was examined at the hospital and samples for a rape kit were collected. Non-motile sperm were noted on a vaginal smear slide. Lynne Helton, a prosecution witness, testified that the number of sperm indicated that the seminal fluid had been deposited no more than six hours before it was collected. The victim had a laceration above her right eyebrow and a broken left thumb. Her clothes were taken into evidence. Physical evidence was also collected from the victim's car. A latent print was found on a small knife, but it was of insufficient quality for comparison purposes when analyzed in early 1990. No other prints were found. None of the other evidence contained anything of evidentiary value.
>
> The case remained unsolved until 2004, when defendant's DNA profile in a national database matched the profile developed from the semen taken from the victim. However, most of the physical evidence from the case was destroyed in 1996, because of a misunderstanding regarding the applicable statute of limitations. The samples from the rape kit were retained because they were stored at the state crime lab, not the Ann Arbor Police Department. No witnesses were able to identify defendant as the assailant. The DNA

match was the only evidence to connect defendant to the offense. Defendant testified that he had consensual sex with the victim on the night before the charged incident, which the victim denied.

*People v. Clay*, No. 278115, 2008 WL 4148972, at *1-2, (Mich. Ct. App. Sept. 9, 2008).

Petitioner's conviction was affirmed on appeal. *People v. Clay,* No. 278115, 2008 WL 4148972, at *1, (Mich. Ct. App. Sept. 9, 2008). Petitioner then filed a post-conviction motion for relief from judgment pursuant to Mich. Ct. R. 6.500, *et. seq.,* which the trial court denied. *People v. Clay,* Case No. 05-2085-FC (Washtenaw County Circuit Court, April 13, 2010). The Michigan appellate courts denied Petitioner's post-conviction appeal. *People v. Clay*, No. 297821 (Mich. Ct. App. August 3, 2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The prosecutor and police violated Petitioner's due process right to a fair trial by bringing him to trial seventeen years after the charged offense, resulting in the destruction of physical evidence that prevented him from effectively defending himself against allegations.

II. Defense counsel's deficient performance prejudiced the outcome of the proceeding when available exculpatory and mitigating evidence was not presented to the jury, violating Petitioner's due process right to effective assistance of counsel and a fair trial.

III. Prosecutor suppressed exculpatory evidence when results of sperm analysis tests were withheld from defense, violating Petitioner's due process rights.

IV. Appellate counsel violated Petitioner's due process right to effective assistance of counsel by omitting significant and obvious issues from appellate brief that were clearly stronger than those presented.

V. Prosecutor committed misconduct by asserting facts not proven beyond reasonable doubt. Petitioner's conviction was obtained through false perjured testimony known to be such by the prosecutor thereby denying due process right to a fair trial.

3

VI. Appellate counsel's deficient performance prejudiced Petitioner and denied due process right to effective assistance of counsel. Appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

The Supreme Court has explained that "[A] federal court's collateral review of a

4

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III. DISCUSSION

#### A. Claim # 1—Pretrial delay and destruction of physical evidence which prevented Petitioner from defending himself

Petitioner first argues that the prosecutor and police violated Petitioner's due process right to a fair trial by bringing him to trial seventeen years after the charged offense, following the destruction of physical evidence which prevented him from effectively defending himself. Petitioner claims that there was no retention policy in

5

place to prevent the destruction of evidence in a case not yet prosecuted.

Respondent argues that Petitioner's first claim alleging a pretrial delay is procedurally defaulted because Petitioner failed to object at trial. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Petitioner has neither alleged nor established a violation of his Sixth Amendment right to a speedy trial, because he was not actually arrested and charged with this crime until 2005. The Supreme Court has noted that it is "[e]ither a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320 (1971). Therefore, although the invocation of the Speedy Trial Clause of the Sixth Amendment need not await indictment, information or other formal charge, the provision of the Speedy Trial Clause does not apply to the period prior to arrest. *Id.*

The Due Process Clause, however, provides a limited role in protecting criminal defendants against "oppressive" pre-arrest or pre-indictment delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Proof of prejudice is generally a necessary, but

6

not sufficient, element of a due process claim involving pre-indictment delay, and the due process inquiry must consider the reasons for the delay as well as prejudice to the accused. *Id.* at 790.

The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for pre-indictment delay is warranted only when the defendant shows: (1) substantial prejudice to his right to a fair trial; and (2) that the delay was an intentional device by the government to gain a tactical advantage. *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992). Where the pre-indictment delay is caused merely by negligence on the part of prosecutors or police, no due process violation exists. *United States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997) (rejecting the argument that "reckless or negligent disregard of a potentially prejudicial circumstance violates the Fifth Amendment guarantee of due process"); *United States v. Banks*, 27 F. App'x. 354, 357 (6th Cir. 2001) ("Our Circuit has recognized that where delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists."). Finally, where a habeas petitioner fails to show that the prosecutor delayed the prosecution for illegitimate reasons, it is unnecessary for a court to determine whether the petitioner satisfies the "substantial prejudice" requirement. *Wolfe v. Bock*, 253 F. App'x. 526, 532 (6th Cir. 2007) (no due process deprivation of right to fair trial when petitioner failed to establish that 15-year delay between murder and his arrest was for illegitimate reasons). Petitioner bears the burden of demonstrating that the delay between the crime and the indictment was an intentional device on the part of the prosecution to gain a decided tactical advantage in its case. *United States v. Schaffer*, 586 F.3d 414, 425–26 (6th Cir. 2009).

7

Petitioner has failed to establish that the sixteen-year delay in charging him was done intentionally by the police or the prosecutor for the purpose of obtaining a tactical advantage in this case.  The Supreme Court in *Lovasco* recognized "that the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure an indictment is well-founded."  *United States v. Eight Thousand, Eight Hundred and Fifty Dollars ($ 8,850) in U.S. Currency*, 461 U.S. 555, 563 (1982).  To prosecute a defendant following an investigative delay does not deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco*, 431 U.S. at 796.

Courts have also considered that the bringing of criminal charges after a case has been reviewed by a "cold case unit" and a determination by that unit to charge the defendant with a crime justify a pre-charging or pre-indictment delay.  *McGuire v. Ludwick*, No. 2:07-CV-15399, 2009 WL 2476452, at *8 (E.D. Mich. Aug. 11, 2009).  In the present case, the delay in prosecution was caused mostly by the fact that Petitioner was not immediately identified at the time of the assault (before widespread DNA matching in a national database), and by Petitioner having fled the state.  Seven years before Petitioner was identified by his DNA, police destroyed the evidence (except for the DNA test results), mistakenly believing they did not need to preserve it any longer.

The destruction of this evidence occurred long before Petitioner was charged or identified, and was not destroyed in bad faith.  Petitioner's claim of the existence of exculpatory evidence contained within the destroyed evidence is purely speculative. No evidentiary value had been obtained from the items following the assault, other than

8

an ambiguous fingerprint. Petitioner is not entitled to habeas relief on his pre-charging

delay claim, because he has failed to establish that the prosecutor intentionally delayed

filing charges to gain a tactical advantage, rather than for valid reasons. Further, the

delay can partly be attributed to Petitioner's decision to flee the state. *See Wolfe v.*

*Bock*, 253 F. App'x. at 532.

The Michigan Court of Appeals also rejected Petitioner's pre-charging delay

claim, ruling that Petitioner had failed to show an intent by the prosecutor to gain a

tactical advantage. Because these findings are supported by the record, the court

concludes that the Michigan Court of Appeals's resolution of Petitioner's pre-charging

delay claim was not contrary to or an unreasonable application of federal law.

Petitioner is not entitled to habeas relief on his first claim, because he has failed to

show that "there is no possibility fairminded jurists could disagree" that the Michigan

Court of Appeals's decision conflicts with Supreme Court precedent. Petitioner is thus

not entitled to habeas relief on his pre-charging delay claim.

### B. Claims # 2, 4, and 6—Ineffective Assistance of Counsel

The court will consolidate Petitioner's second, fourth and sixth claims for judicial

clarity. In these claims, Petitioner contends that he was deprived of the effective

assistance of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test. First, the

defendant must demonstrate that, considering all of the circumstances, counsel's

performance was so deficient that the attorney was not functioning as the "counsel"

guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687

9

(1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Strickland*, 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense.  *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance.  *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether

10

defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). Because of this doubly deferential standard:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788. Finally, the court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" seven years ago and a direct appeal that concluded over five years ago "is precisely what Strickland and AEDPA seek to prevent." *Id.* at 789.

The Michigan Court of Appeals denied the ineffective assistance of trial counsel claim on the merits:

> Defendant argues that trial counsel was ineffective. Because defendant failed to raise this issue in a motion for a new trial or request for an evidentiary hearing, our review is limited to mistakes apparent from the record. *People v. Rodriguez*, 251 Mich. App. 10, 38; 650 N.W.2d 96 (2002). Effective assistance of counsel is presumed and the defendant bears a

11

heavy burden of proving otherwise. *People v. Solmonson*, 261 Mich. App. 657, 663; 683 N.W.2d 761 (2004). The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v. LeBlanc*, 465 Mich. 575, 579; 640 N.W.2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show that counsel's deficient performance denied him the Sixth Amendment right to counsel and that, but for counsel's errors, the result of the proceedings would have been different. *People v. Mack*, 265 Mich. App. 122, 129; 695 N.W.2d 342 (2005).

Defendant's numerous claims essentially take issue with defense counsel's failure to present certain evidence. Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *People v. Dixon*, 263 Mich. App. 393, 398; 688 N.W.2d 308 (2004). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v. Matuszak*, 263 Mich. App 42, 58; 687 N.W.2d 342 (2004). The failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *People v. Hyland*, 212 Mich. App. 701, 710; 538 N.W.2d 465 (1995), vacated in part on other grounds 453 Mich. 902 (1996). A substantial defense is one that might have made a difference in the outcome of the trial. *Id.*

Defense counsel chose not to contest that the victim was attacked. Considering the defense theory that defendant engaged in consensual intercourse with the victim on the night before the assault, thereby explaining the DNA match, and that there was no other evidence connecting defendant to the charged offense, together with the strength of the evidence showing that someone had assaulted the victim and attempted to rob her, this strategy was not unreasonable. That a strategy does not work does not render its use ineffective assistance of counsel. *People v. Kevorkian*, 248 Mich. App. 373, 414-415; 639 N.W.2d 291 (2001).

Defendant asserts that defense counsel could have done more to establish that his DNA was not deposited in the victim at the time of the assault. Defendant contends that defense counsel should have hired an independent DNA expert. However, Helton testified that the smears were not retained after she examined them. Thus, another expert could not have counted the sperm present and defendant offers nothing to suggest that Helton's conclusion, that the amount of sperm present suggested that it was deposited no more than six hours before it was collected, was erroneous. Moreover, the medical testimony that was presented did not contradict Helton's conclusion and defendant fails to identify any medical evidence to support his claim that the sperm could not have been deposited on the night

12

of the assault. Additionally, defendant has mischaracterized the examining nurse's testimony. She specifically stated that she could not estimate when the sperm was deposited.

With regard to the victim's coat, defendant presents nothing to suggest that its return to the victim a few days after the assault constituted evidence tampering or was improper. There is no indication that the coat had any evidentiary value. Moreover, defense counsel used the lack of physical evidence connecting defendant to the victim's car to defendant's advantage. This strategy was not unsound. Declining to raise objections to procedures, evidence, or argument can be sound trial strategy. *People v. Unger (On Remand)*, 278 Mich. App. 210, 242, 253; 749 N.W.2d 272 (2008), lv pending Accordingly, we conclude that defendant was not denied the effective assistance of trial counsel. (footnote omitted).

*People v. Clay*, No. 278115, 2008 WL 4148972, at *4–5, (Mich. Ct. App.

Sept. 9, 2008).

Petitioner claims that trial counsel failed to call witnesses who collected the evidence and filed reports, failed to obtain medical records of the examination that contradicted a forced sexual assault, failed to contact witnesses whose testimony would have supported his defense theory, failed to explain the discrepancies between the 1989 incident reports and the sworn testimony given by complainant, failed to introduce evidence from the investigating officer's report, failed to investigate the various items from the crime scene, and failed to employ an expert.

When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he or she did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See*

13

*Yarborough v. Gentry,* 540 U.S. 1, 5–6 (2003) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)).

Petitioner admitted the DNA was his (though he claimed it was deposited earlier and was the result of a consensual encounter). The witness testimony established that there was a brutal assault on the day in question. Trial counsel's strategy to argue that Petitioner had a consensual relationship with the victim the day prior to the assault while at the same time not challenging the fact of the assault itself (other than to argue it was done by someone else) was a viable trial strategy. Defense counsel cannot be faulted for presenting the strongest defense available. Further, given that there was no more DNA to test, a DNA expert would have been of limited value. As the state appellate court noted, Petitioner mischaracterized Helton's testimony. Petitioner has provided no basis to conclude that anyone else would have been able to testify to when the sperm was deposited based on reading the 17 year-old lab tests. It may well be that any expert would simply have buttressed the prosecution case by supporting the witness's testimony and confirming the presence of Petitioner's DNA. Trial counsel engaged in sound trial strategy by not challenging the crime scene or medical findings pertaining to the sexual assault.

Petitioner also alleges that counsel was ineffective in his decision not to employ an expert. (Habeas Petition, p.7). A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Petitioner has offered no evidence to the court that there exists an expert who could have impeached the victim's testimony concerning the sexual assault; counsel, employing sound trial strategy, may

14

have chosen not to hire a DNA expert believing, as noted above, that additional scientific evidence would only buttress the prosecution's case.

With respect to his post-conviction claims, Petitioner alleges that appellate counsel was ineffective for not raising significant and obvious issues on his appeal of right, which were clearly stronger than those presented.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–397 (1985). However, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754. Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular,'—in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted). The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp.2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting claims. More specifically, Petitioner challenges a report describing the assailant at the crime scene. Petitioner's defense at trial denied his presence at the crime scene and connected his DNA to the victim through consensual sex that occurred the day prior to the assault. Appellate counsel strategically chose appellate issues that were consistent with the defense Petitioner raised at trial. Likewise, challenges to the medical reports and DNA would be inconsistent when Petitioner admitted that the DNA was his. The severity of the assault is also irrelevant, since Petitioner claimed that he was not involved and only had sex with the victim on one occasion the day prior to the assault.

Appellate counsel filed an appellate brief which raised the first claim that Petitioner has presented in his petition, as well as a jury instruction claim that was not

16

raised in his habeas petition.  Petitioner has not shown that appellate counsel's strategy in presenting these two claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, none of the claims raised by Petitioner were "dead bang winners."  *See McMeans v. Brigano,* 228 F.3d 674, 682–83 (6th Cir. 2000).

Petitioner's sixth claim alleges that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim.  As discussed above in Claim II, the Michigan Court of Appeals found that trial counsel was not ineffective.  Appellate counsel, therefore, was not ineffective for failing to raise a meritless issue.

Petitioner lastly contends that appellate counsel was ineffective for failing to raise in his appellate brief several claims that Petitioner raised in his own *pro per* brief. As the Michigan Court of Appeals indicated, the claims were meritless. *Clay*, Slip. Op. at *5–6.  Because the Michigan Court of Appeals considered and rejected the claims as meritless, the court concludes that appellate counsel was not ineffective.  *See Bentley v. Bock*, 239 F. Supp.2d 686, 696–97 (E.D. Mich. 2002).

Petitioner has failed to show that his trial or appellate counsel's performances were deficient or that any deficiencies in the performance prejudiced his defense.  The state courts' denial of relief did not result in decisions that were contrary to *Strickland*. *See Mahaday v. Cason*, 367 F. Supp.2d 1107, 1117 (E.D. Mich. 2005).  Because the post-conviction claims lack merit, the court must reject any independent ineffective assistance of appellate counsel claim raised by Petitioner.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v.*

17

*Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676

(6th Cir. 2001)).   Petitioner's second, fourth and sixth claims are without merit.

### C. Claim # 3—Withholding Exculpatory Evidence

Petitioner alleges that the "[t]ranscripts demonstrate the prosecutor withheld

certain records that were favorable to defendant."  Petitioner then states in his brief that

the "medical records indicate treatment provided was not associated with any type of

sexual assault." (Habeas Petition, p. 9).  Petitioner has failed to offer any evidence to

show which evidence was withheld and how it would have been favorable to his

defense of consensual sex with the victim.

Suppression by the prosecution of evidence favorable to the defendant upon

request violates due process, where the evidence is material to either guilt or

punishment of the defendant, irrespective of the good or bad faith of the prosecution.

*Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a true

*Brady* violation: (1) the evidence at issue must be favorable to the accused, either

because it is exculpatory or because it is impeaching; (2) the evidence must have been

suppressed by the state, either willfully or inadvertently; and (3) prejudice must have

ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

The burden is on a habeas petitioner to prove that evidence that is required to

be disclosed to him under *Brady* was not disclosed to him.  *Coe v. Bell*, 161 F.3d 320,

344 (6th Cir. 1998).  "[M]ere speculation that a government file may contain *Brady*

material is not sufficient to prove a due-process violation."  *United States v. Driscoll*,

970 F. 2d 1472, 1482 (6th Cir. 1992) (internal quotation marks omitted), abrogated on

other grounds by *Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999).

Petitioner does not attach or reference the medical records referred to in his Habeas Petition, nor does he indicate which records were withheld.  Further, counsel's trial strategy was not to deny the assault, but to claim that Petitioner's DNA was deposited prior to the assault through consensual sex.  (Tr. 3/14/2007, pp. 73, 78–79, 85–86).  Being that Petitioner's defense raised at trial connected his DNA through consensual sex with the victim the day before, evidence found at the crime scene would have not been considered exculpatory evidence.  As such, the medical records would pertain to a subsequent sexual assault which Petitioner claims was committed by someone else.

Petitioner has failed to show that the prosecutor withheld exculpatory evidence, and is not entitled to relief on his third claim.

### D.  Claim # 5—The Prosecutorial Misconduct Claim

Petitioner alleges that the prosecutor committed misconduct by arguing in his opening statement that it was defendant who attacked, kidnapped, and raped the victim.  In support, Petitioner argues that the evidence was insufficient to connect Petitioner's semen to the time that the assault was reported and no evidence existed to connect Petitioner to the crimes committed.  As such, Petitioner claims that the prosecutor obtained his conviction through false and perjured testimony.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

19

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643–45; *See also Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir.1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 131 S. Ct., at 786–87). This is particularly so, "because the *Darden* standard is a very

20

general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d at 737. However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* Further, misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)).

In the present case, the record supported the prosecutor's theory. The prosecutor predicted that the facts would show that it was Petitioner who committed the attack, kidnapping and rape of the victim. Based on the evidence to be presented, the prosecutor explained in opening statement that he would ask for the jury to return a verdict of guilt beyond a reasonable doubt. The prosecutor's remarks were relatively isolated, were not extensive, and were only a small part of an opening statement that presented the prosecution's theory of the case and summarized the evidence that would be presented at trial. *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000). When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's opening statement,

21

even if interpreted as partial "misstatements" of evidence yet to be

introduced—misstatements the court does not find in the record—certainly did not

"render the entire trial fundamentally unfair." *Id.* at 533.  Further, the victim's testimony

that she had not had consensual sex with Petitioner, and that he brutally attacked,

kidnapped and raped her as she left her place of employment, supported the

prosecutor's opening statement.  Although the scientific evidence was consistent with

Petitioner's trial testimony that the DNA was his, the jury chose to believe the victim's

testimony that the semen was deposited as a result of the sexual attack, rather than

Petitioner's testimony that the DNA was deposited as the result of a casual sexual

encounter.  The prosecutor did not offer perjured testimony when establishing these

facts at trial.  Petitioner's fifth claim is without merit.

### E.  Motion for Reconsideration and Motion to Stay

On December 20, 2013, the court denied Petitioner's request for discovery,

finding that he was not entitled to discovery as a matter of ordinary course, *Bracy v.

Gramley*, 520 U.S. 899, 904 (1997), and that he had not shown the information he

sought was necessary for the disposition of his case.  Petitioner filed a Motion for

Reconsideration of the Motion Denying Discovery and a Motion to Stay the

Proceedings on December 30, 2013.  Petitioner's Motion for Reconsideration merely

restates Petitioner's Motion for Discovery.  The court will deny Petitioner's Motion for

Reconsideration, being that it restates Petitioner's requests set forth in his Motion for

Discovery.  The Court will also deny Petitioner's Motion to Stay.  The Motion to Stay

requests time to allow Petitioner to supplement the record in connection with expert

witness testimony referred to during trial and with documents that were not part of the

22

court record.  Petitioner is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011).  Further, the court determined that the claims raised in connection with the medical records and expert testimony were meritless due to trial testimony from Petitioner that the DNA was his and that its presence resulted from an act of consensual sex.  The motion for reconsideration and the motion to stay are denied.

### F.  Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. at 327.  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the claim.  *Id.* at 336–37.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the court denies Petitioner a certificate of appealability.

23

## IV. CONCLUSION

IT IS ORDERED that Petitioner Maurice Oakley Clay's petition for writ of habeas corpus [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the Motion for Reconsideration [Dkt. # 26] is DENIED.

IT IS FURTHER ORDERED that the Motion to Stay [Dkt. # 27] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

  s/Robert H. Cleland                    
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 18, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 18, 2014, by electronic and/or ordinary mail.

  s/Lisa Wagner                        
Case Manager and Deputy Clerk
(313) 234-5522